UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD HEMSLEY,<br><br>Defendant. | No. 2:13-CR-300-GEB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF THE MAGISTRATE JUDGE'S DETENTION ORDER** |

Defendant Richard Hemsley moves for revocation of the Magistrate Judge's August 10, 2017 detention order, ECF No. 340, arguing "[t]he U.S. Magistrate Judge's finding that Mr. Hemsley should be detained as a risk of non-appearance was incorrect." Def.'s Mot. to Revoke ("Def.'s Mot.") 11:21–22, ECF No. 351. The United States of America (the "Government") opposes Defendant's motion arguing, inter alia, "[Hemsley] has expressed his contempt for this Court in writing, by refusing to obey its lawful orders, . . . by failing to appear for his violation hearing, and [by] failing to surrender when made aware of this Court's bench warrant for that failure to appear." Gov't Opp'n to Mot. ("Gov't Opp'n") 2:5-8, ECF No. 353. Defendant filed a reply and an amended reply. Reply, ECF No. 356; Am. Reply, ECF No. 357. The

1

motion was heard on November 3, 2017.

18 U.S.C. § 3145(b) prescribes: "If a [defendant] is ordered detained by a magistrate judge, the [defendant] may file . . . a motion for revocation . . . of the order . . . ." In the context of the District Court reviewing the Magistrate Judge's detention order, the Ninth Circuit explained the meaning of the "de novo" standard in United States v. Koenig, 912 F.2d 1190, 1193 (9th Cir. 1990), stating:

> Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court . . . should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate.

Id. (citation omitted).

18 U.S.C. § 3142(b) prescribes in pertinent part: "The judicial officer shall order the pretrial release of the [defendant], . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the [defendant] as required . . . ." The Government has the "burden of showing, by a preponderance of the evidence, that [the] factors" in § 3142(g), which are required to be considered when making the release determination, reveal "that no condition or combination of conditions will reasonably assure that [Defendant] will voluntarily appear." United States v. Santos-Flores, 794 F.3d 1088, 1093 (9th Cir. 2015) (citations omitted).

2

Defendant argues as follows that he should be released on his own recognizance based on his history of appearing, and that his failure to appear on April 5, 2017, was the result of him "misplacing his [cellular] phone":

> Mr. Hemsley made a number of court appearances in this case, including participation in an entire jury trial. He is in custody because of a positive test for Marijuana, for missing a court date due to misplacing his phone for a few days during a critical time, and for trying to have the warrant recalled without going into custody (as is the custom in many situations in state court). By [the November 3, 2017 Hearing], Mr. Hemsley will have been in custody for more than [5] months. Mr. Hemsley realizes the importance of complying with all of his conditions of release, and, if released, he will take the necessary steps to avoid this situation in the future.

Def.'s Mot. 11:22-12:2. Defendant also argues:

> On January 6, 2014, Mr. Hemsley made his initial appearance in this case . . . . [Following the] April 8, 2014 . . . violation petition alleging that Mr. Hemsley tested positive for Marijuana[,] . . . Mr. Hemsley attended court during 2014 [in compliance with] his condition of release to attend Better Choices . . . . Mr. Hemsley returned to court on May 19, 2015, June 16, 2015, July 21, 2015, August 18, 2015, September 15, 2015, October 13, 2015, November 17, 2015, December 15, 2015, January 19, 2016, February 16, 2016, [and] March 15, 2016, with overall positive reports concerning his release from custody and his participation in the Better Choices program . . . . On May 17, 2016, Mr. Hemsley attended court, and graduated from the Better Choices program. He attended the program for a year, and made several court appearances between May 2015, and May 2016, in order to successfully graduate from this program . . . . On July 15, 2016, the defendant made an initial appearance at the revocation of pretrial release hearing . . . . On January 27, 2017, the defendant appeared at his Trial Confirmation Hearing (TCH) . . . . On May 31, 2017, Mr. Hemsley was arrested without incident by the

> United States Marshals Service as he was picking up his mail from his mailing address . . . . [At his Bail Review Hearing, o]n August 10, 2017, the . . . Magistrate Judge . . . did not find that he was a danger, or a flight risk, but found that he is a risk of non-appearance (8/10/2017 RT 6:23).

Def.'s Mot. 3:6, 3:11-15, 4:3-7, 4:14-15, 4:21-22, 5:2-3, 8:16-17, 10:4-11.

The Government counters that Defendant's repeated refusals to abide by the Court's orders and by Pretrial Services' directives favor Defendant's continued detention. The Government further argues:

> On February 27, 2017, Hemsley again tested positive for marijuana. (ECF No. 294). Hemsley received [an email] notice of the April 5[,2017] hearing [concerning his violation of his conditions of pretrial release. Hemsley] responded to the email[,] (ECF No. 336, Exh. A)[ on March 30, 2017, and] Hemsley asserted that pretrial release was an "unlawful form of probation," . . . and concluded by explaining that "PTS [] in conjunction with the Magistrates constitutes a terrorist organization" and that he "will NOT bargaiin [sic] with terrorists." (See id.). Hemsley's [then-]standby counsel indicated [counsel's] unavailability by phone for 9:15 on April 5, but [that counsel] could appear at 2 p.m. the same day or on April 7, 2017. (See id.) The hearing was re-set for the same date (April 5) at 1 p.m., but . . . Hemsley did not appear.
>
> Hemsley claims he lost access to his email in the days between April 3, 2017, and the hearing on April 5. He knew that the hearing was set for 9:15 on April 5, and that there was some doubt as to whether it would be rescheduled. But Hemsley never attempted to call the Court, his standby counsel, the U.S. Attorney's Office, or Pretrial Services. Hemsley claims that he received notice by mail—the same notice he received by email and replied to—on the day of the hearing. But again, he failed to call the Court, the U.S. Attorney's Office, Pretrial Services, or

(apparently) even his standby counsel. When Hemsley failed to appear, [the Magistrate] Judge . . . issued a bench warrant for his arrest. (ECF No. 299). In a letter to [the District] Court, mailed April 5th and apparently written before the 1 p.m. hearing that day, Hemsley did not explain his absence or state that he lost his phone. (ECF No. 301). Rather, he asserted that he needed marijuana for medical purposes, and that he began to "slowly immerse" himself in the same "healing regimen" that he had previously used—an obvious reference to marijuana. (ECF No. 301 at 3) . . . .

. . . .

. . . Hemsley[] failed to appear at the Court-ordered April 5, 2017, hearing scheduled to consider his continued violations of his pretrial release conditions by his use of marijuana products. While Hemsley claims that he was not aware of his obligation to appear at the April 5th hearing date, the Court should reject this false claim. Hemsley knew there was a court-ordered hearing on April 5 (See ECF No. 336, Exh. A), and though there was uncertainty as to whether the hearing time or date might be moved, he failed to take even the simples[t] steps to ensure his appearance. Hemsley never attempted to call the Court, his standby counsel, the U.S. Attorney's Office, or Pretrial Services, any of whom could have informed the Court as to Hemsley's absence and taken appropriate steps.

In addition, Hemsley's intent to avoid the court appearance is reflected in his refusal to self-surrender to the United States Marshals Service despite receiving warnings from both Pretrial Services Officer and the Assistant U.S. Attorney. (See ECF No 336, Exhs. B-D). Hemsley[] has previously admitted that he ignored the order to appear, explaining that he was "looking for a little more time" to attend to his business interests. (ECF No. 323 at 9:15-17). Moreover, Hemsley has produced nothing in support of his claim that he was locked out of his email, and did not raise this issue in his letter to this Court on the date of the hearing. (ECF No. 301). Instead, he decried the perceived injustice of this prosecution. In view of Hemsley's past willingness to say

5

> virtually anything to avoid custody, and in view of the lack of any admissible evidence in support of his claim, the Court should not credit Hemsley's claim that he lost his phone. Either way, a defendant should not be permitted to flout this Court's orders and procedures, and avoid the consequences thereof.
>
> Finally, Hemsley is facing significant jail time if convicted and admitted the offense conduct in a recorded interview. He thus has a strong motivation to avoid incarceration, and has recently acted on that motivation by ignoring [the Magistrate] Judge['s] bench warrant and refusing to surrender himself. This is part of a disturbing trend of contumacy—Hemsley has grown more and more bold in his rejection of this Court's legitimacy and in the assertion of what he believes are his "God-given right to use cannabis" and his "human right" to use marijuana. The Court should not encourage his escalating confrontation, but should order him detained to ensure that he appears at trial . . . .

Gov't Opp'n 4:11–5:5, 12:14–13:11 (footnote omitted).

The Magistrate Judge stated at Defendant's Bail Review Hearing on August 10, 2017, as follows: the detainment issue is "to determine whether or not [Defendant i]s a risk of non-appearance[; whether] he's a risk of flight . . . [i]s not the inquiry at this point." Tr. Bail Review Hearing, Aug. 10, 2017 ("Aug. 10 Tr.") 7:21–25, ECF No. 350. The Magistrate Judge made the following observations and findings after hearing oral arguments and reviewing the record, which included "multiple Pretrial Services['] reports":

> It appears to me that Mr. Hemsley has appeared in front of [almost] every magistrate judge in this courthouse and what [i]s interesting is that I have not been alone in trying to figure out a way to get Mr. Hemsley to recognize that he . . . was in control of his destiny because a number of the magistrate judges released him after

6

| | finding him in violation, keeping him in [custody] for a while. |
|---|---|
| 1 | |
| 2 | |
| 3 | Mr. Hemsley would then have a change of heart about whatever caused the violation. He would apologize for, for example, use of MDMA or use of marijuana, apologize for lying about it to [the Pretrial Services Officer], apologize for lying about it to the Court. He would express his regret and willingness to follow the conditions of the Pretrial Services [O]fficer. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | And then, like me, other magistrate judges thought [Mr. Hemsley] now understands the seriousness of the situation, let's try this again and each and every one of us has been wrong. Each and every one of us thought that Mr. Hemsley at that time understood that he had to comport himself with the [release] conditions of Pretrial Services . . . and the Court's orders and he didn't. |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | . . . . |
| 14 | . . . I'm very reluctant to overrule [the Pretrial Services Officer] who's obviously spent hundreds of hours working on this and order his release. |
| 15 | |
| 16 | . . . . |
| 17 | Probably the root of the problem is that [Mr. Hemsley has] not been honest with himself, but it manifests with his lack of honesty with the Court, the lack of honesty with Pretrial Services and apparently the lack of honesty with people that are willing to help him . . . . |
| 18 | |
| 19 | |
| 20 | |
| 21 | . . . . |
| 22 | I completely understand and I accept his sincerity at this moment. But I've accepted his sincerity in the past, as had the other magistrate judges, and whether or not he's sincere at the moment he's sitting in the custody of the Sacramento County Jail or Nevada County Jail doesn't seem to translate to when he has to do what the Court has ordered him to do. |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | [The Pretrial Services Officer] has done absolutely everything I can imagine. Mr. Hemsley has rejected help. Mr. Hemsley has |
| 28 | |

7

| | |
|---|---|
| 1 | avoided help . . . . |
| 2 | So there are no conditions that appear to be able to be set that Mr. Hemsley will respect enough to stay out of trouble and in compliance with the Court's directives. I candidly think that's a shame, and obviously the other magistrate judges have thought that's a shame too because Mr. Hemsley may indeed have much to offer his community when he decides that he's going to comport with societal norms, and more specifically with the norms that are being set for him by this Court. |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | But my obligation is to determine whether or not he's a risk of non-appearance. He's shown himself to be a risk of non-appearance. The marshals had to go get him. I don't think he's a risk of flight, but that's not the inquiry at this point. He is a risk of non-appearance because he decides when and where he wants to be unless he is brought somewhere when he is needed. |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | . . . . |
| 15 | [The Pretrial Services Officer] remains willing, if ordered by the Court, to supervise Mr. Hemsley which is a great testament to [the Pretrial Services Officer]'s professionalism. But in two weeks I haven't been able to think of anything that I can impose that will reasonably assure the Court of Mr. Hemsley's appearance at future court proceedings. |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | Monetary sanctions haven't worked -- or monetary promises haven't worked. Counseling hasn't worked. Medication hasn't worked. Lawyers haven't worked. It just -- you've used every tool in our toolbox, Mr. Hemsley. There's nothing left that I can think of. |
| 21 | |
| 22 | |
| 23 | . . . . |
| 24 | All right. I believe you, Mr. Hemsley, that you are absolutely sincere at this moment that you are willing to abide by any conditions I set, but history has shown us that your sincerity fades dramatically once you are released from custody. |
| 25 | |
| 26 | |
| 27 | |
| 28 | So I do find at this time that there are no conditions or combinations of conditions |

|   |   |
|---|---|
| 1 | that can reasonably assure your appearance at future court proceedings. I deny your motion for bail review and remand you to the custody of the marshals. |

Aug. 10 Tr. at 3:1-23, 4:5-7, 6:1-5, 6:24-8:18, 9:4-13.

The Pretrial Services Officer recommends that Defendant remains in custody. The Pretrial Services Officer states in the Pretrial Services Report, dated October 20, 2017 ("PTS Report"): Defendant has "an unwillingness or inability to comply with pretrial services['] directives, the Court's orders, and the imposed conditions of release . . . . Pretrial Services continues to believe the defendant has demonstrated he is not amendable to supervision[ and he is] a risk of non-appearance." PTS Report, Mem. July 27, 2017, at 3-4. The Pretrial Services Officer supports his concerns with the following information in the PTS Report:

> Following the February 27, 2017, positive drug test for Cannabinoids/Marijuana (THC), . . . Pretrial Services was unsuccessful in reaching Mr. Hemsley by telephone[.] On [March 20, 2017] . . . , Mr. Hemsley emailed the [Pretrial Services O]fficer and noted he was at a cellular telephone repair shop to fix his cellular telephone's "microphone."
>
> In light of the difficulty in reaching the defendant via his cellular telephone, Pretrial Services primarily maintained communication with Mr. Hemsley via email.
>
> In an email exchange between the [Pretrial Services O]fficer and the defendant, Mr. Hemsley was advised he tested positive for Cannabinoids/Marijuana (THC) and that a bail violation hearing would likely be calendared to address his marijuana use on March 24, 2017.
>
> Mr. Hemsley's email reply to this notification was, "I am Not available on the specified date. I am available as stated

9

| | previously on the 31st. . . ." |
|---|---|
| 1 | |
| 2 | As reflected in the . . . Fourth Bail Violation Memorandum, dated April 5, 2017, Mr. Hemsley emailed the [Pretrial Services Officer] an admission of marijuana/THC use and stated he would not be present for a scheduled bail violation hearing. |

previously on the 31st. . . ."

As reflected in the . . . Fourth Bail Violation Memorandum, dated April 5, 2017, Mr. Hemsley emailed the [Pretrial Services Officer] an admission of marijuana/THC use and stated he would not be present for a scheduled bail violation hearing.

On March 27, 2017, Mr. Hemsley again tested positive for Cannabinoids/Marijuana (THC). On March 30, 2017, Pretrial Services received an email from . . . defense counsel . . ., advising [counsel] had a schedule conflict and request[ing] consideration of another date or time for the bail violation hearing.

According to the Notice of Motion and Motion for Bail Review and Release on Conditions, filed with the Court on June 19, 2017, Mr. Hemsley claims his cellular telephone was temporarily misplaced on April 3, 2017. He reportedly did not have access to his email service, and he was "unaware" of the April 5, 2017, Bail Violation Hearing held before [the] Magistrate Judge . . . .

Pretrial Services would note that Mr. Hemsley was directed in writing to report via telephone every Monday, and he was instructed to "notify your pretrial services officer immediately of any change in address, telephone or employment." Mr. Hemsley failed to report by telephone on Monday, April 3, 2017, and he failed to report he "misplaced" his cellular telephone.

When [Mr. Hemsley] initially provided [his] reported explanation for his failure to appear at the April 5, 2017, hearing, Pretrial Services responded by noting the defendant was previously advised to expect a violation hearing and that Mr. Hemsley made no effort to notify counsel or Pretrial Services of his lost phone, reported lack of access to an email, or enquire as to the date of the bail violation hearing.

Given Mr. Hemsley's statements via email when advised of the pending bail violation hearing, and the lack of response to Pretrial Services' efforts to communicate via telephone, Mr. Hemsley's excuses do not appear to be a reasonable explanation for his

failure to appear at the April 5, 2017, court proceeding.

Most disturbing to Pretrial Service is the defendant's refusal to surrender on the bench warrant or follow the directives of the [Pretrial Services O]fficer following his failure to appear at the April 5, 2017, court proceeding. On April 6, 2017, the [Pretrial Services O]fficer had an email exchange with Mr. Hemsley, in which the defendant was told he had previously acknowledged an email from defense counsel which included the bail violation hearing date.

In this April 6, 2017, email exchange with Mr. Hemsley, he was directed to surrender himself either to Pretrial Services or directly to the U.S. Marshals Service in Sacramento, California the morning of April 7, 2017, and that he would appear on the duty Magistrate['s] calendar at 2:00 p.m. that same day.

Pretrial Services would also note the defendant reported he moved as of April 1, 2017, but failed to request permission to move in advance of his relocation to a new residence and failed to provide the new address to Pretrial Services in a timely manner.

On April 6, 2017, the defendant responded to the email stating, "You're asking me to submit myself to harm? I have written a letter to [the District Judge] on this case. I can not [sic] of good conscious allow harm to my family."

Mr. Hemsley wrote a number of emails in April 2017 noting his personal view of pretrial services supervision and stating such beliefs as "This is a direct threat against my life," "You threaten me with bodily harm," and accused the [Pretrial Services Officer] of making "death threats" against him.

The defendant failed to surrender on the outstanding bench warrant as directed by Pretrial Services. Mr. Hemsley subsequently discontinued reporting to Pretrial Services.

In the June 9, 2017, Notice of Motion and Motion for Bail Review and Release on

>Conditions, the defendant stated he will "absolutely appear in Court at times when he is ordered to do so," he will abstain from marijuana use, and, "he will follow all conditions of release."
>
>However, in an April 21, 2017, email to Pretrial Services and defense counsel, Mr. Hemsley stated his belief that pretrial services supervision is "probation before conviction" and a direct violation of his basic human rights. In his email, Mr. Hemsley accused the [Pretrial Services O]fficer of committing "perjury" and noted he wanted to serve "notice of cancellation of the unconscionable contract," that being pretrial services supervision and the Court imposed conditions of release.
>
>Furthermore, for the reasons outlined in this [Pretrial Services R]eport and the [Pretrial Services Officer's] reports/memorandums, Mr. Hemsley has demonstrated either an unwillingness or inability to comply with pretrial services directives, the Court's orders, and the imposed conditions of release.
>
>. . . .
>
>Pretrial Services does not believe the defendant is amendable to supervision given his statements regarding pretrial services supervision, his stated intentions of continuing marijuana use while on pretrial supervision, and his refusal to respond to directives to surrender himself on the bench warrant from his supervising pretrial services officer following his failure to appear at the April 5, 2017, hearing.
>
>Pretrial Services does not believe Mr. Hemsley will abide by the orders of the Court or will comply with any imposed release conditions in the future. As such, Pretrial Service respectfully recommends Mr. Hemsley remain in the custody of the U.S. Marshals pending further proceedings.

PTS Report, Mem. June 22, 2017, at 2-4. Further, Defendant emailed Pretrial Services Officer on March 30, 2017, stating, inter alia:

12

> [The District] Judge . . . has shown his allegiance in the conspiracy to criminalize and reap the financial rewards of unjust prosecution and imprisonment.
>
> Your "Pre-trial" department is over stepping the lawful bounds of a functional agreement. (Congress acdeptable [sic] terms are further proof of the deception and lies purported to be truth for the interest of the public's safety- German Nationalist Congress agreed with the elimination of the "Jewish Problem" this is no more Lawful than the actions of a lowly burglar)
>
> . . . .
>
> Pre-trial is nothing short of a grotesque human rights violation.

PTS Report, Mem. Apr. 5, 2017, at 4. The PTS Report also contains an email sent from Defendant to his appointed standby counsel, the Government, and Pretrial Services, stating:

> The unlawful demands of PTS [are] no different that [sic] being physically violated by a sexual predator . . . .
>
> This matter can be quickly and easily resolved [by] using intelligent means of written documentation and does NOT require my physical presence in any potentially harmful situations.
>
> . . . .
>
> . . . The PTS . . . in conjunction with the Magistrates constitute a terrorist organization.
>
> I[] will NOT bargaiin [sic] with terrorists. My rights will be observed.
>
> R;D-Hemsley
> UCC1-308 All rights reserved w/o prejudice (all paperwork for PTS signed under durress [sic] constituting a faulty contractual agreement)
> Sui Juris

PTS Report, Mem. Apr. 5, 2017, at 5-6 (emphasis in original).

13

The record shows Defendant's blatant and persistent failure to comply with appearance directives of Pretrial Services and the Court. The Ninth Circuit has explained, "the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." Santos-Flores, 794 F.3d at 1091 (citing United States v. Trujillo-Alvarez, 900 F.Supp.2d 1167, 1176–78 (D.Or. 2012)). Defendant's recalcitrant attitude evincing his past refusals to abide by appearance directives is made apparent through his following statements: "I[] will NOT bargaiin [sic] with terrorists" and "[t]his matter['s] . . . resol[ution] . . . does NOT require my physical presence in any potentially harmful situations" in response to Pretrial Services' notice of a court-ordered appearance date for his hearing for violating pretrial release conditions; and "[y]ou're asking me to submit myself to harm? . . . I can not [sic] of good conscious [sic] allow harm to my family" in response to Pretrial Services' directive to self-surrender based on the court-ordered warrant for his arrest. These statements evince Defendant's vehement volition to not comply with such appearance directives, unless compliance is convenient for him.

Furthermore, the record evinces the Court's waning trust in Defendant's willingness to comply with Court appearance directives. Defendant's strong language of comparing the Court's and Pretrial Services' exercise of pretrial release supervisory authority over him to cause him to feel like he is "being physically violated by a sexual predator" conveys a lack of respect for judicial officials, which is further illustrated by his characterization that "PTS . . . in conjunction with the

Magistrates constitute a terrorist organization." Further, Defendant's signature block at the end of an email that he sent to his appointed standby counsel, the Government, and Pretrial Services, which stated: "all paperwork for PTS . . . constitute[e] a faulty contractual agreement . . . Sui Juris," illustrates a denouncement of judicial authority with respect to imposing appearance requirements. The Ninth Circuit has explained that conditions of release "depend on [Defendant]'s good faith compliance." United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (citing United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990)). When conditions are "too easily circumvented or manipulated" and Defendant fails to uphold the inherent "good faith compliance" of the release conditions and the trust of the Court, the conditions become ineffective. Defendant has been "given a lot of opportunities" to comply with judicial appearance directives, and notwithstanding his in-court assurances that he will comply, his actions and communications with the Court and Pretrial Services demonstrate his lack of respect for judicial authority and that his in-court assurances "fade[] dramatically once [he is] released from custody." Tr. Initial Appearance June 1, 2017, 11:11-12, ECF No. 346; Aug. 10 Tr. at 9:7-8.

Based on review of the evidence that was before the Magistrate Judge and in light of Pretrial Services' recommendation that Defendant remain in custody, the Magistrate Judge's finding that Defendant is at risk of non-appearance is correct. Since Defendant has refused to comply with appearance directives of this Court and Pretrial Services, the Court finds

by a preponderance of the evidence that the Court is not reasonably assured Defendant will appear as directed if he is released. Therefore, Defendant's motion for revocation of his detention order is denied.

Dated: November 8, 2017

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge